IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MICHAEL A.,[1]

    Plaintiff,

v.

NANCY BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

No. 3:17-cv-01659-MO

OPINION AND ORDER

MOSMAN, J.,

Plaintiff Michael A. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's decision denying his application for Disability Insurance Benefits. I have jurisdiction under 42 U.S.C. § 405(g) to review the decision of the Administrative Law Judge (ALJ). For the reasons stated below, I AFFIRM the ALJ's decision.

## PROCEDURAL BACKGROUND

Plaintiff filed his application for Title II Disability Insurance Benefits (DIB) with the Commissioner on July 31, 2013, alleging a disability onset date of January 1, 2010. He also filed a claim for Title XVI Supplemental Security Income (SSI), which was approved. Plaintiff was

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION AND ORDER

found eligible for SSI beginning in August 2013. The DIB claim was initially denied on March 27, 2014, and again upon reconsideration on August 5, 2014. Plaintiff then filed a timely request for a hearing on August 22, 2014. An ALJ held a hearing on March 17, 2016, in which Plaintiff was represented by council and testified, as did a Vocational Expert. The ALJ issued a decision on May 31, 2016, denying Plaintiff's application for DIB on the basis that he was not disabled, as defined by the Social Security Act ("the Act"), during the period from January 1, 2010 until the date he last qualified for disability insurance benefits ("date last insured"). The Appeals Council denied review and Plaintiff appealed to this Court.

## THE ALJ'S FINDINGS

The ALJ made her decision based upon the five-step sequential evaluation process established by the Secretary of Health and Human Services. *See Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520. At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *Tackett*, 180 F.3d at 1098.

At Step One, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2010, through his date last insured of March 31, 2012.

At Step Two, the ALJ determined that Plaintiff's migraines and avascular necrosis were severe impairments between January 1, 2010, and March 31, 2012.

At Step Three, the ALJ determined that, as of his date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work, with the restrictions that he could never climb ladders, ropes, or scaffolds and that he could not be exposed to vibration or to hazards such as unprotected heights and moving mechanical parts.

At Step Four, the ALJ determined that Plaintiff was capable of performing past relevant work as a sales representative, sales manager, telemarketer, and front desk clerk. Because the ALJ determined that Plaintiff had the RFC to do his past relevant work, Plaintiff was not disabled under the Act and the ALJ was not required to engage in the fifth step of the analysis.

## STANDARD OF REVIEW

I review the ALJ's decision to ensure the ALJ applied proper legal standards and that the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (explaining that the ALJ's decision must be supported by substantial evidence and not based on legal error). " 'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Where the evidence can support affirming the ALJ's decision, the reviewing court may not substitute its judgment for that of the ALJ. *Robbins*, 466 F.3d at 882.

## DISCUSSION

Plaintiff argues the ALJ erred as a matter of law in denying his claim for DIB because the ALJ's decision was not supported by substantial evidence in the record. Specifically, he alleges the ALJ failed to (1) provide clear and convincing reasons for discounting Plaintiff's testimony regarding his symptoms; (2) provide germane reasons for discounting the testimony of a lay witness, Ms. Laura Tenny; (3) demonstrate through clear and convincing evidence that Plaintiff did not meet or equal the requirements for Listing 12.04 in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) incorporate all of the medical findings into the determination of Plaintiff's RFC. Because a claimant can qualify for DIB only if his "disability begins by [the] date last insured," *Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017), Plaintiff must show that the ALJ erred in determining that he was not disabled prior to March 31, 2012.

### I. The ALJ's Assessment of Plaintiff's Testimony

Plaintiff argues that the ALJ erred in failing to give adequate reasons for discrediting his account of his symptoms prior to the date last insured. The ALJ determined that Plaintiff's testimony about the intensity, persistence, and limiting effects of the symptoms from his impairments was not consistent with the medical evidence and other evidence in the record. Therefore, after accounting for all of Plaintiff's symptoms, the ALJ found that Plaintiff had the RFC to perform light work during the period from January 1, 2010 to March 31, 2012.

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is

not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In assessing a claimant's credibility, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id.* Specifically, when a claimant's work history undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence in the record. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms he alleged. But, for several reasons, the ALJ found that Plaintiff's testimony was not a reliable source for determining the severity of his symptoms and their limiting effect during the period from the alleged date of onset until the date last insured.

First, the ALJ found that Plaintiff's symptoms prior to the date last insured were largely controlled by medication or other treatment. Surveying medical reports from 2011 and 2012, the ALJ described a pattern of diminishing symptoms that resulted from managing Plaintiff's

medications. Tr. 30. This was contrary to Plaintiff's statements that his symptoms prior to March 31, 2012, were as disabling as those he experienced at the time of the administrative hearing. Tr. 54. Although Plaintiff argues that the ALJ misinterpreted the record, many of the reports he cites in support of his argument were based on observations of his symptoms after the date last insured. *See, e.g.*, Pl.'s Br. [13] at 21. Second, the ALJ cited numerous instances in the record where Plaintiff's treating physicians described him as "healthy appearing" and reported normal physical and neurological examinations. Tr. 32–33. This is contrary to Plaintiff's testimony that he lost a significant amount of weight prior to the date last insured and that he experienced cognitive difficulties. Third, the ALJ found that Plaintiff's testimony about extensive limitations resulting from depression was contradicted by his history of voluntarily stopping mental health treatment. Tr. 33. Additionally, the ALJ noted that, prior to his date last insured, Plaintiff participated in activities of daily life that were inconsistent with his claims of disabling symptoms and limitations: Plaintiff made contemporaneous reports that he lived alone, was able to drive independently, exercised, socialized with friends, and went to church. Tr. 28, 34. Finally, the ALJ noted that Plaintiff had not accurately represented the extent of his work activities during the relevant time period. Although Plaintiff testified at the administrative hearing that he had not sought work since 2008, the record reflected that he ran a small marketing firm in 2011, working less than seventeen hours per week. Tr. 34. Although the ALJ did not find that this work constituted substantial gainful activity, the ALJ found that the inconsistency diminished the reliability of Plaintiff's testimony about his symptoms prior to the date last insured.

The ALJ's reasons for finding Plaintiff's testimony unreliable are clear, convincing, and sufficiently specific for me to determine that her decision was not arbitrary. The inconsistencies

between the record and Plaintiff's testimony about his symptoms supports the ALJ's finding that the testimony was not a reliable source for determining the limitations imposed by Plaintiff's symptoms. Plaintiff conceded that his testimony at the hearing was subject to his "faulty memory." Pl.'s Br. [13] at 25. Although it is possible to offer alternate interpretations of some of the evidence in the record, the ALJ's determination was based on substantial evidence and it must be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004).

## II. The ALJ's Evaluation of Lay Witness Testimony

Plaintiff argues that the ALJ erred in discounting the testimony of a lay witness, Laura Tenny, who provided a written statement detailing her observations of Plaintiff's symptoms. Ms. Tenny was a friend of Plaintiff before the date of alleged onset. She was also paid by the Oregon Department of Human Services to care for Plaintiff starting in 2014, after his date last insured. Ms. Tenny stated that she had witnessed Plaintiff's poor health in March 2012: she saw him experience a seizure and noticed his depression and cognitive difficulties. Tr. 292. Ms. Tenny also listed some of Plaintiff's other symptoms, although not necessarily on the basis of firsthand knowledge. Ms. Tenny relayed that Plaintiff suffered fainting spells caused by standing up, frequent migraines, twenty-eight blackouts in May 2011 caused by "[o]ne of his doctors mismanag[ing] his medications," and that Plaintiff lost eighty-four pounds between 2011 and 2012. *Id.*

Lay witness testimony as to a claimant's symptoms is competent testimony that an ALJ must consider. *Dodrill*, 12 F.3d at 918–19 (citing *Sprague v. Bowen*, 812 F.3d 1226, 1232 (9th Cir. 1987)). Therefore, an ALJ may only discount lay witness testimony by providing reasons that are germane to each witness. *Dodrill*, 12 F.3d at 919. A germane reason to discredit lay

7 – OPINION AND ORDER

testimony is that it is substantially similar to a claimant's validly discredited allegations. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). An ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing *Valentine*, 574 F.3d at 694).

The ALJ in this case gave a germane and specific reason for discounting Ms. Tenny's written statement: her statement repeated Plaintiff's testimony about the symptoms he suffered prior to his date last insured. Tr. 34. Because the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms, the ALJ's description of Ms. Tenny's statement as substantially similar to Plaintiff's testimony was a germane reason for discounting her statement.

### III. The ALJ's Step Two Analysis

Plaintiff alleges that the ALJ erred in finding that the criteria for satisfying listing 12.04 in 20 C.F.R. Part 404, Subpart P, Appendix 1, "Depressive, bipolar and related disorders," were not met in this case. In the alternative, Plaintiff argues that the ALJ should have found that his impairments were medically equivalent to the criteria for listing 12.04. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). The ALJ did not analyze Plaintiff's depression in the step three analysis because she determined in her step two analysis that Plaintiff's depression was not a severe impairment. Instead, the ALJ found that Plaintiff's migraines and avascular necrosis were severe impairments.

At step two, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments, including any mental impairments. *Keyser v.*

*Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). Because Plaintiff made a claim for a mental impairment, the ALJ was required to make use of a "special technique" for evaluating the severity of mental impairments. 20 C.F.R. §§ 404.1520a. Pursuant to the special technique, an ALJ must determine whether a claimant had a medically determinable mental impairment by rating the degree of functional limitation in four functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. If an ALJ determines that a mental impairment is "severe," she proceeds to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder. *Id.* "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months and years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). A claimant, however, bears the burden of showing that his impairments equal or meet one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See Tackett*, 180 F.3d at 1098.

The ALJ considered the effect of Plaintiff's depression on the four functional areas during the period from the alleged onset of symptoms until the date last insured. Tr. 28. The ALJ found that Plaintiff had mild limitation in social functioning because he reported self-isolating but also reported having some friends and participated in some social activities. The ALJ also found that Plaintiff had mild limitation in in concentration, persistence and pace. This finding was based on balancing Plaintiff's self-reports regarding cognitive issues with treatment providers' notes that he presented as cognitively intact with normal remote and recent memory and that he was able to articulate his medical problems clearly. Because Plaintiff was able to live

independently, the ALJ found no limitation in activities of daily living. The ALJ also found no episodes of decompensation. Based on these findings, the ALJ determined that Plaintiff's depression did not cause more than minimal limitation on his ability to perform basic mental work activities.

Plaintiff argues that the ALJ incorrectly evaluated the record. To support this argument, Plaintiff cites medical reports in the record that demonstrate limitations that are greater than "mild." Many of these citations are to reports or evaluations that were conducted after the date last insured. *See, e.g.*, Tr. 577, 641, 542, 526, 645, 640. In particular, a neuropsychological report that Plaintiff uses to establish that "his depression was so high that it was unusual even for clinical groups," and "his persistence was so poor, he was unable to receive an accurate reading because his depression was so high," was completed in February 2014. Pl.'s Br. [13] at 26. These reports establish only that Plaintiff suffered limitations greater than "mild" after his date last insured.

Although there is some evidence that suggests Plaintiff suffered significant limitations in some of the four functional areas prior to the date he was last insured, the role of a district court assessing the ALJ's decision is not to choose between rational interpretations of the record. Here, the ALJ's decision was supported by substantial evidence and must be upheld. The ALJ did not impermissibly select a few isolated instances to determine that Plaintiff's depression was not a severe impairment prior to his date last insured. Instead, the ALJ evaluated the entirety of the record for the time between the alleged date of onset and the date last insured. Plaintiff's arguments to the contrary are unavailing to the extent they rely on evaluations and reports that occurred after his date last insured.

## IV. The ALJ's Formulation of Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ erred in formulating his RFC because she failed to consider the restrictions that resulted from his blackouts, depression, anxiety, migraines, and reduced concentration, persistence, and pace. Plaintiff asserts that the RFC therefore did not take into account all of his limitations. Because the RFC was used to find that Plaintiff was capable of performing light work, and his past relevant work in particular, Plaintiff claims that the ALJ's formulation of the RFC was harmful legal error.

At Step Two of the sequential evaluation process, "the ALJ assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). "An impairment is not severe if it does not significantly limit the physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). In addition, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility" for social security benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1007 (9th Cir. 2006). Finally, the Act defines disability as an impairment that has can be expected to result in death or has "lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

An individual's residual functional capacity is the most "an individual can do despite his or his limitations or restrictions." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Limitations from nonsevere impairments are still considered in formulating an individual's residual functional capacity. *Id.* ("[L]imitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do."). Only limitations supported by substantial evidence

must be incorporated into the residual functional capacity and, by extension, the dispositive hypothetical question posed to the vocational expert at Steps Four and Five. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001).

### A. Blackouts

Plaintiff argues that the ALJ erred in failing to correctly assess the limitations that resulted from his blackouts, or syncope, which occurred frequently at some time prior to the date last insured. Plaintiff argues that the ALJ's formulation of the RFC was deficient because it did not account for the effect of Plaintiff's syncope on his ability to work on a regular and continuing basis.

The ALJ evaluated the medical history of Plaintiff's syncope and determined that the condition did not last more than twelve months and that it resolved with a change in blood pressure medication after his date last insured. Tr. 32–33. In February 2011, Plaintiff complained of syncope that was due to orthostatic hypotension resulting from his blood pressure medications. In May 2011, however, Plaintiff stopped taking his blood pressure medication and reported no dizziness, syncope, or hypotension. Plaintiff made similar reports in June and December of 2011 and again in January and March of 2012. These reports establish both that the condition was managed effectively with medication and that it did not last more than twelve months. Accordingly, there was substantial evidence in the record to support the ALJ's determination that Plaintiff's syncope did not impose limitations that should have been accounted for in the RFC.

### B. Depression

Plaintiff argues that ALJ erred in failing to find that his depression was a severe impairment at Step Two and, in discrediting evidence that his depression was a severe impairment, failing to incorporate that evidence in the RFC.

As noted in Section III of this opinion, the ALJ's determination that Plaintiff's depression was not a severe impairment was based on substantial evidence. In finding that Plaintiff's depression was not a severe impairment, the ALJ evaluated the entirety of the record for the time between the alleged date of onset and the date last insured. Because the RFC must account only for limitations that are supported by the record, it was not legal error for the ALJ to exclude discredited evidence when subsequently formulating the RFC. Accordingly, the ALJ did not err in failing to include additional limitations due to Plaintiff's depression.

### C. Anxiety

Plaintiff argues that the ALJ erred in dismissing limitations arising from his anxiety. Although Plaintiff's brief included an exhaustive account of the medical record, his anxiety was only mentioned once. Pl.'s Brief [13] at 9. In May 2011, Plaintiff reported experiencing anxiety, in addition to thirteen other symptoms of depression. Tr. 298. Because Plaintiff has not shown that there was substantial evidence in the record regarding his anxiety, the ALJ's decision to formulate an RFC that did not include limitations due to anxiety was not harmful legal error.

### D. Migraines

Plaintiff argues the ALJ erred in failing to properly assess the limitations he experienced as a result of migraines. Although the ALJ found that Plaintiff's migraines were a severe impairment, she also found that the limitations imposed by the migraines did not preclude light work. Plaintiff argues that the ALJ's formulation of the RFC was deficient because it discounted

the effect of Plaintiff's migraines on his ability to work on a regular and continuing basis. Plaintiff argues that his migraines limited him to performing less than light work.

The record contains reports of Plaintiff's migraines prior to his date last insured. The severity of the symptoms associated with those migraines varied between January 1, 2010 and March 31, 2012. Plaintiff appears to have first reported his migraines in September 2010, at which time he claimed the migraines had started four months prior. Tr. 30–31. The effects of his migraines during this time appear to have been severe: he reported five to seven migraines per month, with significant side effects. Plaintiff was eventually diagnosed with recurrent posttraumatic headaches. Starting in March 2011, however, Plaintiff began to report that he experienced fewer headaches as a result of taking a new medication. He again reported that medication decreased the frequency and severity of his headaches in May 2011. Tr. 764. Then in June 2011, after being prescribed a second medication, Plaintiff reported that the frequency and severity of his headaches had decreased significantly. Tr. 311. By August 2011, Plaintiff reported that his headaches were "under control." Tr. 307.

In formulating the RFC, the ALJ assessed the duration of Plaintiff's impairment due to migraines. The ALJ also evaluated the degree to which this impairment was controlled effectively with medication. Accordingly, the ALJ did not err by failing to include any additional exertional or nonexertional limitations due to Plaintiff's migraines in the RFC.

### E. Reduced concentration, persistence, and pace

Finally, Plaintiff argues the ALJ erred in failing to properly assess the limitations he experienced as a result of his reduced concentration, persistence, and pace. Plaintiff argues that the ALJ erred in formulating the RFC because it did not account for the effect of Plaintiff's reduced concentration, persistence, and pace on his ability to work on a regular and continuing

basis. Plaintiff argues that his reduced concentration, persistence, and pace limited him to performing less than light work, which was the residual functional capacity determined by the ALJ.

The ALJ considered Plaintiff's "cognitive issues" in formulating the RFC but, for two reasons, declined to include any limitations related to concentration, persistence, and pace. First, Plaintiff's statements to treatment providers during the relevant time period were contradicted by the providers' own assessments of Plaintiff's cognitive abilities. Tr. 33. The ALJ noted one such instance when Plaintiff complained of "mental fogginess, poor memory and poor concentration," but the treatment provider noted that Plaintiff "appeared cognitively intact and was able to articulate his problems very clearly without difficulty." *Id.* Second, the ALJ noted that Plaintiff had never been diagnosed with a condition associated with reduced cognitive ability. *Id.*

Plaintiff argues that his ability to articulate his symptoms was sporadic and does not demonstrate that there was no limitation due to reduced concentration, persistence, or pace. Pl.'s Br. [13] at 22. Plaintiff correctly argues that symptoms related to mental health conditions may wax and wane. *Id.* These temporary improvements should not form the basis for a finding that there is no impairment or limitation if the entirety of the record demonstrates otherwise. But Plaintiff has failed to show that the record demonstrates limitations due to reduced concentration, persistence, or pace that should affect the formulation of an RFC. Although Plaintiff cites assessments documenting his cognitive issues in support of his argument that any improvement was only temporary, many of these assessments occurred after the date last insured. *See, e.g.*, Tr. 96, 349, 566, 640. Because Plaintiff's application for DIB must demonstrate that his symptoms

occurred prior to the date last insured, assessments after the date last insured do not demonstrate that the ALJ improperly evaluated the record.

Accordingly, the ALJ did not err by failing to account for any additional nonexertional limitations due to Plaintiff's alleged reduced concentration, persistence, or pace in the RFC.

## CONCLUSION

For the reasons stated, I find the ALJ's decision was supported by substantial evidence. Accordingly, I AFFIRM the decision. This case is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 20 day of November, 2018.

MICHAEL W. MOSMAN
Chief United States District Judge